1

**PATTERSON LAW GROUP**

2   James R. Patterson (CA 211102)

3   402 West Broadway, 29th Floor
San Diego, California 92101

4   Telephone: 619.756.6990
Facsimile:  619.756.6991

5   jim@pattersonlawgroup.com

6
**CARPENTER LAW GROUP**

7   Todd D. Carpenter (CA 234464)

8   402 West Broadway, 29th Floor
San Diego, California 92101

9   Telephone:   619.756.6994

10  Facsimile:    619.756.6991
todd@carpenterlawyers.com

11

12  Attorneys for Plaintiffs

13  [Additional Counsel]

14

15                   IN THE UNITED STATES DISTRICT COURT

16          FOR THE NORTHEN DISTRICT OF CALIFORNIA

17  Ilana Imber-Gluck, On Behalf of Herself        Case No.
    and All Others Similarly Situated,
18                                                 **CLASS ACTION COMPLAINT FOR:**

19          Plaintiff,                             1.   DECLARATORY RELIEF

20  vs.                                            2.   VIOLATION OF CONSUMERS
                                                        LEGAL REMEDIES ACT, CIVIL
21                                                      CODE §1750 *et seq.*;

22  GOOGLE, INC., a Delaware Corporation.          3.   VIOLATION OF THE UNFAIR
                                                        COMPETITION LAW, BUSINESS
23          Defendants.                                 AND PROFESSIONS CODE §17200
                                                        *et seq.*;
24                                                 4.   UNJUST ENRICHMENT /
                                                        RESTITUTION; and
25                                                 5.   BREACH OF DUTY OF GOOD
26                                                      FAITH AND FAIR DEALING

27                                                 DEMAND FOR JURY TRIAL

28

Plaintiff Ilana Imber-Gluck brings this action on behalf of herself and all others similarly situated against Defendant Google, Inc. ("Google") and states:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of herself and other parents and guardians whose minor children: (a) downloaded from Defendant Google, Inc. ("Google" or "Defendant") a free or modestly priced application ("App"), in most cases video games targeted to minor children; and (b) then incurred charges for in-game-related voidable purchases that the minor was induced by Google to make, without the parents' and guardians' knowledge or authorization.

2.     Google is an American, multinational corporation specializing in Internet-related services and products.  These include its well-known internet search engine, cloud computing, software, and online advertising technologies.  Google also operates "Google Play," formerly the Android Market,[1] a digital distribution platform for applications for the Android operating system and an online electronics and digital media store.  The service permits users to browse and download applications developed with the Android software development kit and published through Google, as well as music, magazines, books, movies, and television programs.  Apps are available through Google Play either free-of-charge or at a cost.  Apps are software applications that users download on their mobile computing devices.  For example, they can be downloaded directly to an Android cell phone, portable tablet, *i.e.*, a "Kindle," or to a Google TV device through the Google Play Store mobile app, or by deploying the App to a device from the Google Play website.

3.     Google is a leading seller of Apps.  Among the thousands of Apps that Google offers for sale are gaming Apps targeted at children.  Although numerous gaming Apps are offered for free and may be downloaded at no cost, many such games are designed to induce purchases of what Google refers to as "In-App Purchases" or "In-App

---

[1] On March 6, 2012, with the merging of the Android Market and Google Music, the service was renamed Google Play to coincide with the rebranding of Google's digital distribution strategy.  As of July 2013, the Google Play store officially reached over 1 million apps published and over 50 billion downloads.

Case No.                                                1
CLASS ACTION COMPLAINT

Content," *i.e.*, virtual supplies, ammunition, fruits and vegetables, cash, and other fake "currency," *etc.*, within the game in order to play the game as it was designed to be played ("Game Currency"). These games are highly addictive, designed deliberately so, and tend to compel children playing them to purchase large quantities of Game Currency, amounting to as much as $100 per purchase or more. As such, the sale of Game Currency to minors is highly lucrative.

4.      Google requires its users to authenticate their accounts by entering a password prior to purchasing and/or downloading an App or buying Game Currency. However, once the password is entered, Google permits the user, even if a minor, to buy Game Currency for up to 30 minutes without reentering the password. This practice enables minors to purchase Game Currency, in one-click large-dollar-amount sums, without entering a password, causing Google to pocket millions of dollars from such Game Currency transactions with minors and without the authorization of their parents, whose credit cards or PayPal accounts are automatically charged for the purchases.

5.      Plaintiff brings this action for monetary, declaratory, and equitable relief under California's contract laws, Consumers Legal Remedies Act, Business and Professions Code Sections 17200, *et seq.*, and/or for Unjust Enrichment on behalf of herself and other similarly situated consumers whose minor children have purchased Defendant's App products.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a class action involving more than 100 class members. Plaintiff is a citizen of a state different from Defendant, and the amount in controversy, in the aggregate, exceeds the sum of $5 million exclusive of interest and costs.

7.      Google transacts business in this District and has subjected itself to this Court's jurisdiction through such activity, and a substantial part of the events and transactions giving rise to the claims occurred in this District. Accordingly, venue is proper in this District under 28 U.S.C. § 1391.

8.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in California, and is authorized to conduct and does conduct substantial business in California.  Defendant has marketed, promoted, distributed, and sold Game Currency in California, rendering the exercise of jurisdiction by this Court permissible.

9.     Defendant's user agreement mandates the Northern District of California, Santa Clara Division, as its forum for this litigation, with respect to all proposed Class members.

## PARTIES

10.     Plaintiff Ilana Imber-Gluck resides in New York with her four- and five-year-old sons.  In or around February 2012, Plaintiff utilized her debit card to establish a "Google Play" account and placed it on file to make future purchases of Google Play downloads and Apps.   In February 2014, Ilana Imber-Gluck downloaded onto her Samsung Galaxy Tab 2 10.1 ("the Tablet") the App Marvel Run Jump Smash ("Run Jump Smash").  In the 30 minutes after Ms. Imber-Gluck permitted the download, a subsequent purchase was made in the Run Jump Smash game without her authorization and, subsequently, Plaintiff received notification by email that Google Play had charged her account $65.95 for Game Currency "Crystal (Marvel Run Jump Smash!)."  The Game Currency purchases were made by one of Plaintiff Imber-Gluck's minor sons.

11.     Defendant Google, Inc. is a Delaware Corporation with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## FACTUAL ALLEGATIONS

12.     The Google Play Store ("Google Play") is one of the largest retailers of digital content in the world.  Google Play sells all varieties of digital content (*e.g.*, music, movies, TV shows, audio books, and Apps) that can be downloaded on any device with the Android operating system.

13.     Google sells Apps through Google Play which may be accessed directly from certain devices (such as, *e.g.*, Samsung Galaxy phones or Samsung tablets).

14.     Google offers Apps in many genres, including travel, business, education,

finance, entertainment, and games.  Games are by far the most downloaded of all genres.
Apps can be downloaded for free, or for a licensing fee that ranges from $.99 to $9.99 or
more.  It is the gaming Apps that Google targets and sells to minor children that are the
subject of this action.

15.    Apps are either developed by Google or licensed to Google by independent
App developers.  The App developers license their Apps to Google for sale at the Google
Play online store, and Google splits the revenues earned from the sale of the App, or from
the sale of In-App Purchases, with the App developer.

16.    Google supervises and controls the function and operation of the Apps it
sells.  Before an App is made available by Google, Google staff test the App and confirm
its compliance with dozens of rules that Google imposes unilaterally.  If Google deems an
App noncompliant with Google's rules, Google will not make the App available for sale.

17.    In all instances relevant to this action and the proposed Class, the sale of the
App and/or any Game Currency is a transaction directly between Google and the
consumer.  There is no privity between the user and the developer of the App (unless
Google itself is the App developer).  Although some Apps can be purchased and
downloaded directly from the developer and other retailers which sell Apps supported by
the Android system, this lawsuit is limited to purchasers of Apps from the Google Play
Store.  Google, and Google alone, is the provider to the user of the Apps at issue in this
lawsuit.  Google charges its customers' credit (or debit) cards or PayPal accounts through
its online "Google Wallet", or processes Google Play gift cards, and no App developer
ever receives a Google App customer's credit (or debit) card number or PayPal account
information when the App is purchased through the Google Play store.

18.    Anyone thirteen years old or older can utilize an account on Google Play.[2]
Consumers are required to establish a "Google Wallet" account in order to purchase
products online (*i.e.*, license) from Google Play.  Opening an account requires, among

---

[2] *See* Google Play Terms of Service, ¶ 1, "Age Restrictions."  *Available at*
https://play.google.com/intl/en_us/about/play-terms.html.

other things, selecting a user name and password, providing certain contact and other information, and agreeing to Google's Terms & Conditions, which are ostensibly a contract.  Users may then make purchases in any of a number of ways, including, most frequently, by supplying Google with a credit or debit card number or PayPal account through the Google Wallet function.  For users who specify credit or debit card or PayPal payment, Google automatically draws funds from the account holder's credit or debit card or PayPal account.

19.    Prior to the purchase of an App, Google requires account holders to enter their password.  However, once the account holder enters the password, he or she (or in cases relevant to this Complaint, his or her minor child) could make purchases for up to 30 minutes without re-entering the password.  Thus, a parent could enter his or her password to permit a child to download a free gaming App, and then allow the child to download and play the game.  What Google did not tell parents, however, is that their child was then able to purchase Game Currency for 30 minutes without any supervision, oversight or authorization.

20.    Following an onslaught of consumer outrage over non-refunded improper charges made by minors and an investigation by the Federal Trade Commission, Apple, Inc., Google's primary  competitor in digital App development and sales, changed its practice to require the input of a password for *every* individual purchase of "Game Currency", thereby ending Apple's own *15-minute* purchase window.

21.    Despite consumer outrage over Google Play's *30-minute* purchase window for In-App purchases, the pending FTC investigation into Apple's Game Currency practices and Apple's subsequent elimination of its 15-minute purchase window for In-App purchases, Google continues to sell Game Currency to minors.  Minors thirteen years old and older are permitted to open their own Google accounts, and minors younger than thirteen may purchase Game Currency by using their parents' general Google password (no special Google password is required to purchase Game Currency).

22.    As alleged above, many games are targeted to minors, and are free or cost a

nominal charge to download.  Many such games, however, are designed solely to lure minors to purchase Game Currency in order to meet the objectives of the game.

23.    Such games, by design, are highly addictive.   They were developed strategically to induce purchases of Game Currency.  For example, as recently reported by Consumer Reports,[3] the game "PetHotel" from the developer, "Pocket Gems" is free to download on the Google Play Store:

Screen Shot of Pet Hotel:



End shot.

24.    Consumer reports demonstrated with relative ease the manner in which In-App Game Currency could be purchased without any reasonable security protections.

[3] *See*, http://www.consumerreports.org/cro/news/2014/01/google-play-store-lets-your-kid-spend-like-a-drunken-sailor/index.htm (last verified on February 21, 2014).

Consumer reports accessed and downloaded a children's video game App from Google Play entitled: "Tap Pet Hotel," on an Android tablet and approved one in-app purchase for ninety nine cents ($0.99) of digital doggie treats, ("Bunch of Treats"). The user was requested to enter the Google Password associated with the Google Play account. However, after entering the password and making this initial purchase, the user was able to shop with unfettered access for a full 30 minutes before the password protection screen presented itself again:

> "So I installed the Android version of that game on an Android tablet by downloading it free from the Google Play Store. Having previously enabled the store's password protection feature (using the Google Play app's Settings), I approved one in-app purchase of a Bunch of Treats for 99 cents, just as any soft-hearted parent might do. As you can see below, there was no indication on the screen that I had approved anything but that 99 cent purchase. Morphing from Doting Dad to mischievous child, I then entered the Pet Hotel unsupervised, where I spent the next 30 minutes making seven more 99 cent in-app purchases of Treats or Coins, all without any further authorization. Just tap and spend. (Sometime during that period I indulged in a spontaneous detour from the game to the Play Store and tacked on an unauthorized purchase of an unrelated app for $2.99—just because I could.) Total cost of my spending spree: $9.92. My childlike binge came to an abrupt halt when Google Play's 30-minute time limit on unauthorized purchases kicked in, after which the Play Store once again required a password in order to buy anything."

*See* http://www.consumerreports.org/cro/news/2014/01/google-play-store-lets-your-kid-spend-like-a-drunken-sailor/index.htm (last verified on February 21, 2014).

Screen Shot of Single Purchase Game Currency Google Password Entry:



There's no indication on the display that you're OK'ing anything more than one purchase.

End Shot.

25.     While the FTC has yet to take action against Google, the European Commission announced on February 27, 2014, that it would investigate claims raised by several of its member nations that "free" applications that often result in exorbitant charges to consumers are misleading.  EU justice commissioner, Viviane Reding, has been quoted as saying "[m]isleading consumers is clearly the wrong business model and also goes against the spirit of EU rules on consumer protection."  *See* http://www.reuters.com/article/2014/02/27/eu-consumers-apps-idUSL6N0LW2QF20140227 (last verified on March 3, 2014).

26.     The user (as well as Plaintiff and the proposed Class members) was given no indication by Google that they were approving anything more than a single ninety-nine-cent ($0.99) transaction when their password was first entered for the initial purchase of

Game Currency.   But as demonstrated by the example in Consumer Reports, an unsupervised child could easily have purchased several hundreds of dollars of Game Currency before the 30-minute period elapsed and the security password function reappeared.   The inherent dangers of a seemingly inexpensive, or in this example, a "free" App, obviously marketed to minor children, are the In-App features which market expensive Game Currency to children after a seemingly innocuous ninety-nine-cent ($0.99) purchase.

27.   For example, in the Pet Hotel video game App, after the initial purchase was made, the child-user is then tempted to purchase Game Currency at significantly more expensive prices and quantities, including $49.99- to $99.99-worth of Game Currency in a single purchase:

Screen Shot of Bulk Sale Game Currency:



End Shot.

28.     Thus, Run Jump Smash is by no means the only App that preys on children in such manner.  Google offers many games that use the same bait-and-switch business scheme as Rum Jump Smash.  Google entices the child with a free or inexpensive (e.g., $0.99) download of a gaming platform that then offers the sale of irresistible Game Currency in order to enjoy the game as it was designed to be "played."  Within seconds of "playing" the game, one is led to a screen that sells virtual currency, so that the "player" can "build" things or "have" other virtual things.

29.     The targeting of children by Google and inducing them to purchase, without the knowledge or authorization of their parents, millions of dollars of Game Currency is unlawful exploitation in the extreme.  Fortunately for the members of the Class, such purchases of Game Currency constitute voidable contracts because they were entered into with minors.

## CLASS ALLEGATIONS

30.     Ilana Imber-Gluck, on behalf of herself and all other similarly situated California residents, pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, seeks certification of the following Class:

> All persons in the United States who paid for an unauthorized purchase of Game Currency made by their minor children (the "Class").  Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and the Judge to whom this case is assigned, any immediate family members thereof.

31.     The Class is numerous and geographically dispersed such that joinder of all Class members is impracticable.   The proposed Class contains many thousands of members.  Plaintiff believes there are thousands of members of the Class whose names and addresses are in Google's records.

32.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  The common legal and factual questions include, but are not limited to, the following:

(a)     Whether Google sold Game Currency;

(b)     Whether Google sold Game Currency to minors;

(c)     Whether Google knew that many gaming Apps it sells are designed to induce minors to purchase Game Currency;

(d)     Whether Google intended for minors to purchase such Game Currency without the knowledge or authorization of the minors' parents or guardians;

(d)     Whether Google's sales to minors of Game Currency constitute voidable contracts;

(e)     Whether Google's scheme to induce minors to purchase Game Currency violates California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, and Unfair Competition Law, Business & Professions Code § 17200, *et seq.*;

(f)     Whether Google was unjustly enriched by its scheme; and

(g)     Whether Plaintiff and the Class have been damaged, and if so, in what amount.

33.     Plaintiff's claims are typical of the claims of other members of the Class, and there is no defense available to Google that is unique to Plaintiff.  Plaintiff paid $65.95 to Google for unauthorized purchases of Game Currency made by her minor child.

34.     Plaintiff will fairly and adequately represent the interests of the Class.

35.     Plaintiff has no interests that are antagonistic to those of the Class.  Plaintiff has the ability to assist and adequately protect the rights and interests of the Class during the litigation.   Further, Plaintiff is represented by counsel who are competent and experienced in this type of class action litigation.

36.     This Class Action is not only the appropriate method for the fair and efficient adjudication of the controversy, it is the superior method because:

(a)     The joinder of thousands of geographically diverse individual Class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and litigation resources;

(b)     There is no special interest by Class members in individually controlling prosecution of separate causes of action;

(c)   Class members' individual claims are small compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive, if not totally impossible, to justify individual Class members addressing their losses;

(d)   When Google's liability has been adjudicated, claims of all Class members can be determined by the Court and administered efficiently in a manner that is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of many individual cases;

(e)   This class action will promote the orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time and resources;

(f)   This class action will assure uniformity of decisions among Class members;

(g)   Without this class action, restitution will not be ordered and Google will be able to reap the benefits or profits of its wrongdoing; and

(h)   The resolution of this controversy through this class action presents fewer management difficulties than individual claims filed in which the parties may be subject to varying adjudications of their rights.

37.   Further, class treatment is appropriate because Google has acted, or refused to act, on grounds generally applicable to the Class, making class-wide equitable, injunctive, declaratory, and monetary relief appropriate.  In addition, the prosecution of separate actions by or against individual members of the Class would create a risk of incompatible standards of conduct for Google and inconsistent or varying adjudications for all parties.  A class action is superior to other available methods for the fair and efficient adjudication of this action.

38.   California's substantive laws apply to every member of the Class, regardless of where in the United States the Class member resides.  Specifically, Google imposes on its account holders a set of Terms and Conditions that must be accepted before becoming

an account holder and before making any purchases or downloads from Google Play. Among such Terms and Conditions is the following:

> The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Services. All claims arising out of or relating to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.[4]

39.     Further, California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV § 1 of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

40.     Google's United States headquarters and principal place of business is located in California.  Google also owns property and conducts substantial business in California, and therefore California has an interest in regulating Google's conduct under its laws.  Google's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct emanating out of California, renders the application of California law to the claims herein constitutionally permissible.  California is also the state from which Google's alleged misconduct emanated.  This conduct similarly injured and affected Plaintiff and all other Class members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

41.     Plaintiff repeats and re-alleges herein the foregoing allegations.

---

[4] *See* Google's Terms of Service: https://www.google.com/intl/en/policies/terms/; incorporated into Google Play terms of service: https://play.google.com/intl/en-US_us/about/play-terms.html.

42.     All Game Currency that Google presents for sale constitutes an offer to enter into a sales contract.

43.     All Game Currency purchased by a minor constitutes acceptance of Google's offer.

44.     Every payment made by the members of the Class for the purchase of Game Currency by their minor children constitutes consideration for the provision of the Game Currency.

45.     Accordingly, all transactions that are the subject of this Complaint are possessed of the three elements of a contract: offer, acceptance, and consideration.

46.     Under California law, minors have the right to disaffirm contracts such as those at issue here.  Cal. Fam. Code § 6710 (2010).

47.     California law further provides that a parent or guardian may disaffirm a contract on behalf of a minor.

48.     The contracts between Defendant and the members of the Class are voidable.

49.     Accordingly, there is an actual controversy between the parties, requiring a declaratory judgment.

50.     This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201, *et seq.*, seeking a determination by the Court that: (a) this action may proceed and be maintained as a class action; (b) the contracts between Defendant and the Class members relating to the purchase of Game Currency are voidable at the option of the respective Class members on behalf of their minor children; (c) if the Class members elect to void the contracts, they will be entitled to restitution; (d) an award of reasonable attorneys' fees and costs of suit to Plaintiff and the Class is appropriate; and (e) such other and further relief as is necessary and just may be appropriate as well.

## SECOND CAUSE OF ACTION

### (Violation of the California Consumers Legal Remedies Act)

51.     Plaintiff repeats and re-alleges herein the foregoing allegations.

52.     At all times relevant hereto, there was in full force and effect the California

Consumers Legal Remedies Act ("CLRA" or "Act"), Cal. Civ. Code § 1750, which applies to all Class members by virtue of Defendant's choice of law election.

53.     Plaintiff and the Class members are consumers within the meaning of Cal. Civ. Code § 1761(d).

54.     Google violated the CLRA's proscription against the concealment of the characteristics, use, benefit, or quality of goods by actively marketing and promoting certain gaming Apps as "free" with the intent to induce from minors the purchase of Game Currency.  Specifically, Google has violated:  (a) Section 1770(a)(5)'s proscription against representing that goods have uses or characteristics they do not have; (b) Section 1770(a)(7)'s proscription against representing that goods are of  particular standard or quality when they are of another; and (c) Section 1770(a)(14)'s proscription against "Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

55.     Under California law, a duty to disclose arises in four circumstances: (a) when the defendant is in a fiduciary relationship with the plaintiff; (b) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (c) when the defendant actively conceals a material fact from the plaintiff; or (d) when the defendant makes partial representations but also suppresses some material facts.

56.     Google owed a duty to disclose material facts about the Game Currency embedded in games it marketed, advertised, and promoted to children as "free."  Google breached such duty as alleged in this Complaint.

57.     Plaintiff and the Class suffered actual damages as a direct and proximate result of Google's actions, concealment and/or omissions in violation of the CLRA, as evidenced by the substantial sums Google pocketed.

58.     Plaintiff, on behalf of herself and for all those similarly situated, demands judgment against Google for equitable relief in the form of restitution and/or disgorgement of funds paid to Google.

59.     Pursuant to § 1782(d) of CLRA, Plaintiff Ilana Imber-Gluck notified Google

in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Google rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit A. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within thirty days of the date of written notice pursuant to § 1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

60. Defendant's conduct is malicious, fraudulent, and wanton, and provides misleading information.

61. Pursuant to § 1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

### THIRD CAUSE OF ACTION

### Violation of Business and Professions Code §17200, *et seq.*

62. Plaintiff repeats and re-alleges herein the foregoing allegations.

63. Plaintiff brings this cause of action on behalf of herself and the Class members and in her capacity as a private attorney general against Google for its unlawful, unfair, fraudulent, and/or deceptive business acts and practices pursuant to California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200, *et seq.*, which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

64. Plaintiff asserts these claims as a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that Google should be required to reimburse under UCL § 17200, *et seq.*

65. This claim is predicated on the duty to refrain from unlawful, unfair, and deceptive business practices. Plaintiff and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.

66. The UCL § 17200, *et seq.* prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a)

"unlawful…business acts or practices"; (b) "unfair fraudulent business acts or practices"; and (c) "unfair, deceptive or misleading advertising."

67. Google violated the UCL by engaging in conduct that violated each of the three prongs identified by the statute as set forth throughout this Complaint.

68. Google committed an *unlawful* business act or practice in violation of the UCL § 17200, *et seq.* when it violated the CLRA.

69. Google committed *unfair and fraudulent* business acts and practices in violation of the UCL §§ 17200 and 17500, *et seq.* by actively advertising, marketing and promoting certain gaming Apps as "free" with the intent to lure minors to purchase Game Currency in a manner likely to deceive the public.

70. Google's deceptive practices were specifically designed to induce the children of Plaintiff and Class members to purchase Game Currency.

71. Google's deceptive practices have deceived and/or are likely to deceive Plaintiff and members of the consuming public.

72. As a direct and proximate cause of Google's violation of the UCL, Plaintiff and the Class have suffered harm in that they have not been reimbursed for the purchases of Game Currency their children made from Google.

73. As a direct and proximate result of Google's violation of the UCL, Google has been unjustly enriched and should be required to make restitution to Plaintiff and the Class or disgorge its ill-gotten profits pursuant to the UCL § 17203.

74. Plaintiff, on behalf of herself and for all others similarly situated, demands judgment against Google for injunctive relief in the form of restitution and/or disgorgement of funds paid to Google as alleged herein.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment/Restitution

75. Plaintiff repeats and re-alleges herein the foregoing allegations.

76. Plaintiff and the Class have conferred benefits on Google by paying for the Game Currency purchased by their minor children without their knowledge or permission.

77.     Google knowingly and willingly accepted the monetary benefits provided by Plaintiff and the Class.

78.     Under the circumstances alleged herein, it is inequitable for Google to regain the benefits at the expense of the Class.

79.     Google has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class by wrongfully collecting money that Google is not entitled to retain.

80.     Plaintiff and the Class are entitled to recover from Google all amounts wrongfully collected and improperly retained by Google, plus interest thereon.

81.     As a direct and proximate result of Google's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Google of the benefits conferred by Plaintiff and the Class.

## FIFTH CAUSE OF ACTION

### (Breach of the Duty of Good Faith and Fair Dealing)

82.     Plaintiff repeats and re-alleges herein the foregoing allegations.

83.     Google's contracts with Plaintiff and the Class included a term, implied at law in all contracts, requiring the parties to exercise "good faith and fair dealing" in all duties relating to the performance of the contract.  By engaging in the misconduct alleged herein, Google has breached its contractual duty of good faith and fair dealing with Plaintiff and the Class.

84.     Plaintiff has adequately pled all of the elements for a breach of the implied covenant of good faith and fair dealing, which are: (a) an agreement between the parties; (b) plaintiff's performance under the agreement; (c) defendant's engagement in conduct separate and apart from the performance of obligations under the agreement without good faith and for the purpose of depriving plaintiff of rights and benefits under the contract; and (d) damages to plaintiff.

85.     The agreement between Plaintiff and the Class on the one hand, and Google on the other hand, are the "Terms & Conditions" that each member of the Class agreed to

when they opened a Google Play account.

86.     Plaintiff and other members of the Class fully performed their duties under the contract.  Plaintiff and Class members signed the Terms & Conditions and paid for all content purchased from Google Play.  If any member of the Class had failed to honor their obligations under the Terms & Conditions, Google would have suspended or cancelled their Google Play account, and, in addition, would have prevented future purchases from occurring.  Thus, Google enjoys a far greater bargaining position than Plaintiff and the Class.

87.     Google engaged in conduct that was separate and apart from their obligations under the agreement without good faith and for the purpose of depriving Plaintiff and the Class of rights and benefits under the contract, to wit, a sales transaction for an item that the consumer *intended* to purchase.

88.     Google has collected and continues to collect millions of dollars from Plaintiff and the Class by luring their minor children to download bait applications and games and then, while the 30-minute window is open, spend vast sums on Game Currency without parental knowledge or permission.   Such behavior violates any conception of good faith and fair dealing.

89.     Plaintiff and the Class have suffered and continue to suffer damages as a result of Google's actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class and her counsel as class counsel pursuant to Fed. R. Civ. P. 23(g);

C.   Entering judgment in favor of Plaintiff and the Class and against Google;

D.   Entering a Declaratory Judgment determining that the contracts between Defendant and the Class members relating to the purchase of Game Currency are voidable at the option of the respective Class members and that if the Class members elect to void the contracts, they will be entitled to restitution;

E.   Awarding Plaintiff and members of the Class their individual damages and attorneys' fees and allowing costs, including interest thereon, and/or restitution and equitable relief; and

F.   Granting such further relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  March 6, 2014                    **CARPENTER LAW GROUP**

By: */s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
todd@carpenterlawyers.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6990
Facsimile:  619.756.6991
jim@pattersonlawgroup.com

**DEL SOLE CAVANAUGH STROYD LLC**

Benjamin J. Sweet (PA 87338)
Edwin J. Kilpela, Jr. (PA 201595)
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Telephone: 412.261.2393
Facsimile: 412.261.2110
bsweet@dscslaw.com
ekilpela@dscslaw.com

**BERGER & MONTAGUE, P.C.**
Shanon J. Carson
Patrick Madden
1622 Locust Street
Philadelphia, PA 19103
Telephone:  215.875.4656
Facsimile:   215.875.4604
scarson@bm.net
pmadden@bm.net

Attorneys for Plaintiffs and the Class